CONSEQUA (WILLINGS v.). See Cases Nos. 17,766 and 17,767.

## Case No. 3,128a.

### CONSOLIDATED COAL CO. v. The SECRET.

District Court, S. D. New York. 1879.

#### MARITIME LIEN FOR SUPPLIES.

[Coal delivered to a foreign vessel in pursuance of an agreement with, and on the credit

of, her charterers, is not furnished on the credit of the ship.]

In admiralty. Libel in rem by the Consolidated Coal Company of Maryland against the steamship Secret for supplies.

H. E. Tremaine, for libelants.

Butler, Stillman & Hubbard, for claimants.

CHOATE, District Judge. This is a libel for supplies furnished to the Secret on the credit of the ship. She belongs to a British corporation. About the 15th of December, 1878, the ship not then being in port, the firm of Murray, Ferris & Co. made an agreement with the libelants under which the libelants were to furnish two schooner loads of coal, to be sent, one to Jacksonville, Florida, and the other to Nassau, N. P.,—in all 250 tons,—and about 175 tons more were to be delivered to the Secret on her arrival in this port, where she was expected in a few days. Murray, Ferris & Co. informed libelant's agent that the Secret was to run in their line, which libelant's agent knew was a line between Jacksonville and Nassau, and the libelant's agent also understood, from the statements of Murray, Ferris & Co. at the time of the agreement, that the Secret was not an American vessel; but they did not know, and did not inquire, who her owners were, and where they resided. The price of the coal was agreed to, being $3.85 a ton for the two schooner loads to be delivered on board the schooner at the libelant's dock at Hoboken, and $4.00 a ton for that to be delivered to the Secret; this difference in price being caused simply in consequence of the difference of expense and convenience of delivery between the two places. The sale was a cash transaction. The 250 tons were delivered to the two schooners, which were chartered for the purpose by Murray, Ferris & Co., and bills of lading given by the masters of the schooners were received by the libelant's agents, and sent with the bills for the coal to Murray, Ferris & Co. These bills of lading made the coal deliverable at Nassau and Jacksonville to persons designated by Murray, Ferris & Co. The bills were made to Murray, Ferris & Co. This coal delivered to the two schooners was, as Murray, Ferris & Co. gave the libelant's agents to understand, to be there used by the Secret in her trips between those ports, and it, or part of it, was to be delivered by the schooners to the Secret, if in port on their arrival, otherwise to be discharged on her dock. Afterwards the Secret arrived in this port, and the libelants, in pursuance of the agreement, delivered to her 170 tons of coal, and sent the bill to Murray, Ferris & Co. In fact, but not within the knowledge of libelants, Murray, Ferris & Co., who were a firm of merchants in this city, then in good credit, had chartered the Secret for four months, to run in their said line, agreeing to pay for all her supplies. They had had prior dealings with the libelants, purchasing coal of them, and these three items of coal sold were carried by libelants into the account of "Murray, Ferris & Co." on their ledger, with another previous item there charged. The books kept by the libelant's agents do not show any entry indicating that the coal was sold on the credit of the steamship, nor, at the time of the purchase, was anything said about its being furnished on her credit. Libelant's agent, indeed, who made the sale, testified that the sale was on the credit of the steamship, but the circumstances clearly show the contrary, and his testimony, taken together, seems to indicate that all he meant by the statement was that he supposed that the ship was bound to pay for the coal if Murray, Ferris & Co. did not do so. The coal was all purchased under one agreement, and there can be no distinction drawn, as to the credit on which it was sold, between that shipped on the schooners and that delivered here to the steamship. The two schooner loads were absolutely and completely delivered to Murray, Ferris & Co.; put entirely in their power to do with what they liked. There was not even an agreement exacted from them that the coal should go to Nassau and Jacksonville. There was no reason to believe that, after that coal left this port, the Secret would ever be here again. Assuming that in fact this coal was actually used on the Secret, proof of which was defective on the trial, but which the libelants have reserved the right to produce evidence of, in case such evidence would entitle them to recover, all the usual indications of a credit to the vessel are wanting, if indeed it is possible for a maritime lien for supplies to be created through such an absolute intermediate delivery to another party. It also appears that Murray, Ferris & Co., and not the ship, or her owners, were expected by the libelants to pay for the coal until after their insolvency. It is, I think, very clear that the sale of this coal was made directly to Murray, Ferris & Co., and on their credit. It is therefore unnecessary to consider other points raised by the claimants.

Libel dismissed, with costs.